### HAYES *v.* BEYER.

1. CONTRACTS—PERFORMANCE—CONDITIONS.

> Where a contract is performable on the occurrence of a future event, there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event, particularly where it is dependent in whole or in part on his own act and where he prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability.

2. SAME—PERFORMANCE OF CONDITION PRECEDENT—WAIVER BY PROMISOR.

> The performance of a condition precedent is discharged or excused and the conditional promise made an absolute one, where the promisor himself waives the performance.

3. BROKERS—COMMISSIONS—PERFORMANCE OF PURCHASER.

A broker will not be entitled to recover his commission if it is dependent upon some act of the purchaser unless the broker shows the purchaser's performance or the principal's prevention of performance.

4. SAME—COMMISSIONS—PREVENTION OF PURCHASER'S PERFORMANCE —REPURCHASE OF PROPERTY BY VENDOR.

In action by broker who negotiated sale of defendant's land to a purchaser for balance due on agreement to pay plaintiff a commission as and provided contract payments were made to vendor, finding of trial court that payment by defendant to purchaser of $25,000 for reconveyance at a time when contract payments were not in default and thus prevented purchaser's performance of condition *held*, proper, where defendant was an experienced business man, he was of opinion land was worth more at time of reconveyance than when originally sold by him, and continued to make payments on the commission account after the reconveyance, hence, plaintiff was entitled to entire balance due her under commission contract.

Appeal from Washtenaw; Sample (George W.), J. Submitted January 19, 1938. (Docket No. 119, Calendar No. 39,715.) Decided April 4, 1938.

Assumpsit by William G. Hayes against A. Quay Beyer to recover brokerage commission. Judgment for plaintiff. Defendant appeals. Affirmed.

*Frank B. De Vine* (*C. Sears Rogers*, of counsel), for plaintiff.

*James R. Breakey, Jr.,* for defendant.

SHARPE, J.     July 7, 1926, defendant sold 127.26 acres of land in the township of Ypsilanti to Joseph A. Martin for the sum of $127,260. Defendant agreed to pay a commission on the sale of said land in the sum of $4,365. One half of the commission was to be paid to Bertha Hayes as assignee of George W. Hayes under the following agreement:

"I agree to pay to Bertha Hayes to whom a part of said commission was assigned two and one-half per cent on said semi-annual payments of $5,408.55 plus the interest as soon as and provided said payments are made to me, and only in case said payments are paid to me, until said Bertha Hayes shall have received $2,182.50 which amount is the balance due under this agreement.

"It is understood that I am not to pay any further commission unless the payments above provided for are actually paid to me. It is further understood that the limit of the obligation under this agreement is $2,182.50."

The defendant made payments on the commission due to Bertha Hayes under the terms of the contract until sometime in July, 1929, when he created a voluntary trust with the Guardian Trust Company, later to become the Union Guardian Trust Company. In this trust he placed the contract with Bertha Hayes as an obligation due from him. January 21, 1930, the trust company wrote Bertha Hayes as follows:

"We are enclosing our check in the amount of $39.90, being interest on commission agreement of Augustus Quay Beyer.

"Mr. Beyer does not feel able at this time to make a payment on the principal and requests that you defer full payment until such time as he is able to take care of it."

Bertha Hayes accepted this payment and under date of July 31, 1930, the trust company again made the semi-annual payment of interest due upon the balance of the principal.

Sometime in May or June, 1927, defendant took the property back from Joseph Martin, paying about $25,000 for a reconveyance of the land. No commission payments were made after July 31, 1930, and

the present action was commenced in February, 1936. The trial court held:

"It appears to the court that the defendant deliberately repurchased the land from the purchaser and placed it beyond the purchaser to make the payments due under said contract so that the contract with the said Bertha Hayes could be carried out and the payments made to the said Bertha Hayes from the payments received under said land contract. It also appears from the testimony that the defendant treated said contract with the said Bertha Hayes as in full force and effect after the payment of the money to the said Joseph A. Martin and treated the moneys due under said contract as an obligation due and owing from him to the said Bertha Hayes."

Judgment in the sum of $1,846.90 was entered in favor of plaintiff. Defendant appeals.

Defendant contends that the express terms of a special agreement for broker's commission must first be complied with and the contingency of the condition precedent met before the broker is entitled to payment and cites *Kolodziejczak* v. *Bak,* 220 Mich. 274, as authority for his claim. Defendant further contends that the commission payments made by him, subsequent to the reconveyance of the property, were made because the broker threatened suit and he (Beyer) could not afford another lawsuit at that time; and that the payments made by the trust company were made without his knowledge or authority.

Additional facts helpful to a decision in this cause are that the defendant was a man of long business experience; he having been in business over 20 years, having dealt in real estate, having been in the banking business about six years, and having been the holder of several different properties in the city of Detroit.

Defendant testified as to his reasons for paying Joseph Martin $25,000 for a reconveyance of the land, as follows:

"*Q.* Well, you didn't give $25,000 to save foreclosure, did you?

"*A.* That was one of the reasons.

"*Q.* You didn't give $25,000 to save foreclosure on a land contract, did you?

"*A.* That's one of the reasons, and another was that I didn't want him (Martin) to peddle it.

"*Q.* No; you didn't give Joseph Martin $25,000 in order to avoid a foreclosure on that contract, did you?

"*A.* Not entirely, no."

And when questioned as to his reasons for continuing to pay on the commission account, he stated as follows:

"*A.* * * * That $39 payment, I thought I was getting out of it cheap and George had intimated to me that maybe I had gotten more out of the property, the land was worth more when I was forced to take it back than it was. I mean there were offers of more money. Sure, there were, and I felt that perhaps I had gained on the deal and if I had, we were good friends and had been in deals together; made lots of money together."

It is the claim of plaintiff that defendant by his voluntary repurchase of the land· from Martin waived the condition precedent mentioned in the broker's agreement.

In 13 C. J. p. 648, § 722, the rule is well stated:

"Where a contract is performable on the occurrence of a future event, there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event, particularly

where it is dependent in whole or in part on his own act; and where he prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability. * * * Hence, the performance of a condition precedent is discharged or excused, and the conditional promise made an absolute one, where the promisor himself * * * waives the performance.''

In *Riley* v. *Palmer* (Tex. Civ. App.), 250 S. W. 762, it is said:

''Where there is a special contract making the broker's commission dependent upon the performance of some act by the purchaser, the broker will not be entitled to recover unless he shows the purchaser's performance or the principal's prevention of performance.''

In *Tracy* v. *O'Neill,* 103 Conn. 693, 699 (131 Atl. 417), the court said:

''The 'signing of the contract' was prevented by the unwarranted act of the defendant himself; and on familiar principles of law, if a promisor, without legal excuse, prevents the happening of an event upon which his liability depends, he cannot thus be allowed to defeat the promisee.''

See, also, *Fitzpatrick* v. *Gilson,* 176 Mass. 477 (57 N. E. 1000).

In *Taylor* v. *Simi Construction Co.,* 23 Cal. App. 308 (137 Pac. 1095), plaintiff sued upon a contract which provided that the payment should ''be made within three days after water is turned on the first 25 or more acres of land.'' The court said:

''The defendant having agreed to make payment within a stated time after the happening of an event, could not by refusing to permit that event to occur escape liability upon its contract.''

In *Greenberg* v. *Sakwinski,* 211 Mich. 498, 504, we said:

"The claim that no commission was payable, or owing, until title passed and the sale was consummated, under the language of the contract that payment was to be 'made at the time of settlement of the sale,' calls for no extended discussion. If plaintiff fully performed on his part and defendant's malconduct rendered it impossible to make 'settlement of the sale' according to the land contract he had signed he is estopped from taking advantage of his own wrong."

We are in accord with the finding of the trial judge that the action of defendant was a deliberate repurchase of the land from the grantee named therein. The experience that defendant has had in business makes it improbable that he would pay $25,000 to the grantee named in the contract for a reconveyance rather than take the necessary proceedings to declare and perfect a forfeiture of the contract. We have in mind that at the time of the reconveyance there was no default in the payments. Our views in this matter are fortified by the fact that in the opinion of defendant, the land had greater value at the time of its reconveyance than when defendant entered into the contract to sell it to Martin. Moreover, the action of defendant in continuing payments on the commission account was a recognition that his obligation to plaintiff had not been discharged.

The judgment of the trial court is affirmed. Plaintiff may recover costs.

WIEST, C. J., and BUTZEL, BUSHNELL, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.